UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

                                        NO. CR. S-99-0433 WBS

          Plaintiff,

          v.                            <u>ORDER RE: MOTION TO RECUSE</u>

JOHN THAT LUONG,
MINH HUYNH,
HOANG AI LE, and
THONGSOUK THENG LATTANAPHOM,

          Defendants.

----oo0oo----

          After I have worked on this case for nine years, ruled on over 200 motions, and presided over more than forty days of jury trial, defendants move to disqualify me as the trial judge. The grounds for the motion fall into essentially three categories: (1) rulings and statements I have made in this case; (2) rulings I made in other cases; and (3) the fact that I was previously victim of a crime which defendants characterize as similar to those charged in this case.

<u>Rulings and Statements in this Case</u>

          Defendant Minh Huynh complains that I (1) denied his

1

pretrial motions, (2) intimidated him into giving up his right to represent himself by calling him "stupid," (3) denied his discovery motion, (4) denied him a psychiatrist, (5) rejected a requested instruction, and (6) inappropriately told the jury that he was responsible for the twelve-year delay in getting to trial because he kept firing his lawyers.  Defendant John That Luong adds the grounds that (1) I overruled his attorney's objection to certain of the prosecutor's comments in closing argument and (2) in ruling on his attorney's motion to withdraw after representing him through two trials I suggested that he and his attorney were acting in concert to obstruct the proceedings.

Disqualification of a district judge for bias or prejudice is controlled by 28 U.S.C. § 144.  Previously, courts construed section 144 to require that to be disqualifying the alleged bias and prejudice must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.  See United States v. Grinnell Corp., 384 U.S. 563, 583 (1966); see also, e.g., United States v. Carignan, 600 F.2d 762, 763 (9th Cir. 1979) ("28 U.S.C. § 144 . . . requires that the bias or prejudice of the judge be twofold: (1) personal, i.e. directed against the party, and (2) extra-judicial.") (citations omitted). The Supreme Court, however, has now explained that the "extrajudicial source" is only a factor, albeit "significant (and often determinative)."  Liteky v. United States, 510 U.S. 540, 551, 555 (1994) ("The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a necessary condition for 'bias or prejudice' recusal, since

2

predispositions developed during the course of a trial will sometimes (albeit rarely) suffice.").

I did deny Minh Huynh's pretrial motions because they had no merit, and I refused the jury instruction to which he refers.  I do not recall denying any request for a psychiatrist, but the docket sheet in this case contains 1184 entries, and it is possible that over the nine year course of this litigation I denied such a request.  (I do remember granting his requests to be examined by a dentist and to have a doctor look into an alleged abdominal problem about which he was complaining.)  Nor do I recall ever telling the jury at any time before they reached a verdict that Minh Huynh was responsible for the delay in bringing the case to trial.  In fact he, as well as the other defendants, did cause much of the delay by serially moving to fire their attorneys as each of the trial dates approached, and I may well have explained that to the jury <u>after</u> the trial was over, because I believe they have a right to know why the wheels of the justice system in which they have been asked to participate appear to move so slowly.

I also do not recall using the word "stupid" in the context of his request to represent himself pursuant to <u>Faretta v. California</u>, 422 U.S. 806 (1975).  If I did, the record will speak for itself and will properly reflect the context.  The law requires me to explain the dangers and disadvantages of self-representation to the defendant.  <u>Snook v. Wood</u>, 89 F.3d 605, 613 (9th Cir. 1996).  The benchbook which I use (*Benchbook for U.S. District Judges*, Fifth Edition 2007) was provided by the Federal Judicial Center, and suggests that in taking a <u>Faretta</u> waiver the

3

1   court should "say to the defendant something to this effect:"

2       I must advise you that in my opinion, a trained lawyer would
    defend you far better than you could defend yourself.  I
3   think it is unwise of you to try to represent yourself.  You
    are not familiar with the law.  You are not familiar with
4   court procedure.  You are not familiar with the rules of
    evidence.  I strongly urge you not to try to represent
5   yourself.

6   Id., at 7.  It is quite possible that in giving this advice I

7   used, or more likely defendant interpreted my remarks to use, the

8   word "stupid."  However, whatever I said did not intimidate Minh

9   Huynh to give up his right to self representation as he alleges,

10  because notwithstanding my admonitions he elected after the

11  Faretta colloquy to represent himself.  It was not until after he

12  was well into the trial, apparently recognizing his own

13  shortcomings as a lawyer, that he changed his mind and asked the

14  court to allow his advisory counsel to represent him for the

15  remainder of the trial.

16          Because "judicial rulings alone almost never constitute

17  a valid basis for a bias or partiality motion,"[1] I do not believe

18  that any of the above grounds are sufficient to disqualify me as

19  the trial judge in this case.

20                         Rulings in Other Cases

21          In his Reply to the government's opposition to his

22  motion, Minh Huynh refers to the sentence I imposed upon Huy Chi

23  (Jimmy) Luong in the companion case of United States v. Luong, et

24  al., Cr. No. S-96-350, which he says, without any authority, was

25

26          [1]     Liteky, 510 U.S. at 545 (citation omitted); accord
    United States v. Azhocar, 581 F.2d 735, 739 (9th Cir. 1978)
27  ("Adverse rulings do not constitute the requisite bias or
    prejudice of § 144. . . . There is thus no merit to appellant's
28  claim of bias based on adverse rulings.") (citations omitted).

                                    4

"30 years more than any comparable cases with the same offense and characteristics."  He also attaches a newspaper article referring to the sentence I imposed upon a defendant in another, unrelated, case involving the death of a nine-year old Viet Namese girl from a firebomb which the defendant in that case threw through the window of the home in which she was sleeping. (<u>United States v. Tu Minh Truong</u>, Cr. No. S-00-211.)

Rulings in other cases are treated the same, for purposes of a motion to disqualify, as rulings in this case.  <u>See</u> <u>Liteky</u>, 510 U.S. at 545, 555 ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, <u>or of prior proceedings</u>, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.") (emphasis added); <u>see also</u> <u>Lewis v.</u> <u>Tuscan Dairy Farms, Inc.</u>, 25 F.3d 1138, 1141 (2d Cir. 1994) (rejecting an argument for bias that was based on the judge's ruling in an unrelated case in which the judge had imprisoned the defendant and held him in contempt of court).

I should not have to justify every sentence I have ever imposed in order to defend against a charge of bias.  Suffice it to say I do not believe the previous instances cited by defendants are sufficient to display the kind of deep-seated favoritism or antagonism that would make fair judgment impossible.

Victim of a Crime

The final ground urged for recusal is the fact that in 1997 I was the victim of an allegedly similar crime.  Initially,

5

1   there is a question as to how similar that crime was to the

2   crimes charged in this case.   The crimes charged here are

3   conspiracy to commit a robbery affecting interstate commerce; use

4   of a firearm during a crime of violence; and death caused by use

5   of a firearm during a crime of violence.   The facts here involved

6   a home invasion robbery with the object of torturing the

7   residents to gain access to their business.

8          In contrast, the incident involving me was not a

9   robbery affecting interstate commerce, nor did it involve the use

10  of a firearm.   It did not even involve a home invasion.   The

11  facts of that incident are summarized in the attached copy of a

12  news article which appeared in <u>The Sacramento Bee</u> the following

13  morning.   Two young men were attempting to burglarize my house

14  when I surprised them by coming home early.   Although it

15  technicly turned into a robbery at that point, it was originally

16  intended as a residential burglary.   I was not beaten or

17  tortured, as were the victims in this case.   Rather, the object

18  of the offense was simply to steal my belongings from my house.

19  The two young men were eventually apprehended and charged with

20  simple residential burglary, and my recollection is that they

21  were each sentenced by a state judge to twelve months in the

22  county jail.

23         Assuming some similarity between the crimes, the more

24  important question is whether having been the victim of that

25  crime disqualifies me from presiding as the judge in this case.

26  Precedent with respect to judicial recusal when judges are

27  victims of a violent crime similar to an action before them is

28  scarce.   <u>See</u> <u>Mann v. Thalacker</u>, No. 95-3008, 1996 WL 33423405, at

*9 (N.D. Iowa Oct. 9, 1996) ("This court was unable to find any case law dealing with a judge's duty to recuse when he has been a victim of a crime similar to that for which the defendant is being tried."); United States v. Fiat Motors of N. Am., Inc., 512 F. Supp. 247, 250-51 (D.D.C. 1981) (identifying reluctance to recuse the judge presiding over an automobile recall case who himself was a past victim of an auto accident because "no case authority directly on point or similar to the situation here, involving disqualification or recusal, has been found").

Defendants rely upon the doctrine of "implied bias," which is more commonly cited as a ground for juror disqualification, and allows for "bias to be implied or presumed from the 'potential for substantial emotional involvement, adversely affecting impartiality,' inherent in certain relationships." Tinsley v. Borg, 895 F.2d 520, 527 (9th Cir. 1990) (quoting United States v. Allsup, 566 F.2d 68, 71 (9th Cir. 1977)). Courts appear willing to apply that same doctrine when determining the propriety of a motion to recuse a judge. See Liteky, 510 U.S. at 552 (equating the process of weighing judicial impartiality for recusal purposes with the inquiry into a prospective juror's impartiality for disqualification purposes); Mann, 1996 WL 33423405, at *9 ("[A]nalogous cases involving challenges for cause for potential jurors are therefore instructive in discerning whether a judge should recuse himself in this situation.").

In determining whether a potential juror--who himself or herself was a past victim of a similar violent crime or conduct--could be challenged for bias, courts base their

7

decisions on considerations such as "the person's assurances of objectivity, understanding of the concept of the presumption of innocence and reasonable doubt, and recognition that the accused in the present case had not been involved in the prior crime against the juror." Id. Additional factors for consideration that are more applicable to a recusal determination include "the length of time since the victimization, the similarity of the incidents, and the juror's [or judge's] lack of acquaintance with the present victim." Id.

A key factor in this analysis seems to be "the similarity of the incidents." See Allsup, 566 F.2d at 71 ("That [people] will be prone to favor that side of a cause with which they identify themselves either economically, socially, or emotionally is a fundamental fact of human character." (quoting Kiernan v. Van Schaik, 347 F.2d 775, 781 (3d Cir. 1965))).  The Ninth Circuit has granted a new trial on the basis of a juror's implied bias due to "the similarity of the incidents" at least three times.

In Allsup, the court presumed that two prospective jurors in a bank robbery trial were biased because they were employed by the bank that had been robbed, though they worked at a different branch. Id. at 71-72 ("The employment relationship coupled with a reasonable apprehension of violence by bank robbers leads us to believe that bias of those who work for the bank robbed should be presumed."). In United States v. Eubanks, 591 F.2d 513 (9th Cir. 1979), a juror at a heroin distribution trial was presumed biased because his sons were heroin addicts who were in prison for crimes committed to obtain heroin. Id. at

8

517 ("Regardless of the reason for [the juror's] nondisclosure, we conclude that his sons' tragic involvement with heroin bars the inference that Collins served as an impartial juror.").

Finally, in <u>Dyer v. Calderon</u>, 151 F.3d 970 (9th Cir. 1998), a Ninth Circuit en banc panel vacated a prior decision partially based on the implicit bias presumed from a juror's failure to disclose that her brother was killed in a similar manner as the defendant had allegedly murdered the victim. <u>Id.</u> at 1982 ("After watching a number of potential jurors disclose relatively minor crimes and get dismissed, [the juror] chose to conceal a very major crime--the killing of her brother in a way that she knew was very similar to the way [defendant] was accused of killing his victims."). <u>But see</u> <u>Tinsley v. Borg</u>, 895 F.2d 520, 529 (9th Cir. 1990) (no implied bias where juror at rape trial once provided professional counseling services to rape victims).

I have been able to find only four cases that dealt directly with a judicial decision whether to recuse a judge because he or she was once a victim of circumstances similar to the matter before the bench. Those cases are set forth in the margin below.[2] Notably, none of the judges recused themselves,

---

[2]    In <u>United States v. Fiat Motors of N. Am., Inc.</u>, 512 F. Supp. 247 (D.D.C. 1981), the court held that the mere fact the judge presiding over an action forcing an automobile distributor to recall its vehicles had been involved in an automobile accident which had eventually resulted in loss of one of his legs--and additionally that he had filed a civil complaint as result of the accident--did not show bias or raise doubts as to his impartiality so as to require his recusal. <u>Id.</u> at 250-51. The court cautioned that

the logical extension and result of [defendant's] argument would require [judicial] disqualification in a

substantial number of other proceedings. If, in fact, [a judge's] injuries and losses would cause a reasonable person to question [a judge's] ability to render impartial judgments on questions of automobile safety and defects, would it not also lead a litigant to raise questions about [a judge's] impartiality in any personal injury litigation involving an automobile? If the defendant's position were accepted, would it be proper for [a judge] to preside in any trial involving a serious personal injury claim, whether it stems from a motor vehicle collision, an aircraft disaster, an industrial explosion or any of an endless list of other types of accidents resulting in serious personal injury?

Id. at 251; see also id. ("The unfortunate incident which [the judge] experienced several years ago is, of course, lasting in nature, but it is no more lasting than some of the personal and background experiences of other trial judges where disqualification attempts were advanced by a litigant and denied.").

In Mann v. Thalacker, No. 95-3008, 1996 WL 33423405 (N.D. Iowa Oct. 9, 1996), the defendant, found guilty of kidnapping and attempted murder, asserted that the trial judge's failure to disclose his own history of sexual abuse and therein recuse himself kept defendant from making a knowing, voluntary waiver of his right to a jury trial. Id. at *1. The court held that, because the incident took place more than twenty years prior to trial and the judge had openly spoke of the incident before the postconviction proceedings, no reasonable person could conclude that the judge would be perceived as being partial. Id. at *9 (finding that although "[t]he trial judge was himself the victim of the crime of sexual abuse," because he "divulged the details of these acts . . . prior to the postconviction case" and "these experiences happened nearly twenty years prior to [defendant's] trial," "[u]nder these circumstances, this court does not believe that a reasonable person could conclude that the judge would be perceived as being disqualified under . . . section 455(a)").

The court in United States v. Robbins, 48 M.J. 745 (A.F. Ct. Crim. App. 1998), emphasized that "it is axiomatic that, the mere fact that a [judge] has been the victim of the type offense with which an accused is charged, standing alone, will not constitute sufficient grounds for recusal." See id. at 754. The court thus delineated the following three-prong standard in order to guide their recusal inquiry:

When the [] judge is asked to recuse himself or herself because he or she was the victim of a similar offense, the following factors must be weighed and balanced by the [] judge, as follows: 1) the time frame of the offense; was the [] judge victimized in the very recent past or

1  and when appealed, none of their decisions were overturned.

2       Unlike rulings or statements I may have made in this or

3  other cases, however, this final ground urged for recusal is

4  based on events that occurred outside the context of any judicial

5  function or proceeding.  Where the affidavit refers to

6  extrajudicial sources, it may be sufficient to trigger the

7  _____

8       the distant past?; 2) were the facts and surrounding
       circumstances of the crime especially egregious so as to
9       inflame one's emotions at the expense of one's judicial
       instincts when recalling the event?; and, 3) if the
10      answer to 2 is yes, would a reasonable person with
       knowledge of all of the relevant facts conclude that
11      sufficient time has passed whereby the [] judge's
       judicial instincts and temperament are no longer
12      compromised?

13 Id. at 754.  In light of this criterion, the court held that
   there was no reasonable doubt that the judge under review, who
14 was a past victim of spousal abuse, was impartial to current
   defendant charged with spousal abuse because: (1) "the events in
15 question occurred 13 years prior to the trial," (2) "it is clear
   from the [judge's] responses that she was in no way inflamed at
16 the prospect of being confronted with an instance of spouse
   abuse," and (3) "even if she were, at some point in her past,
17 inflamed by her personal experience, [the court found] that a
   reasonable person would conclude from her answers that she has
18 put the experience behind her and moved on."  Id.; see also id.
   (commenting that "a reasonable person understands that judges are
19 not grown in, and harvested from, a sterile, idyllic existence
   frequently referred to as the 'ivory tower'" but that "[i]n
20 fact, our national experience supports the opposite conclusion,
   which is that the average citizen, civilian or military, prefers
21 judges with real-life experiences").

22      Finally, in United States v. Zidar, 178 Fed. Appx. 673
   (9th Cir. 2006) [I have cited to this case even though it is an
23 unpublished decision because it is nevertheless helpful in the
   analysis], the Ninth Circuit concluded that despite the judge's
24 admission that two decades before the instant fraud and
   misrepresentation case she had brought an unrelated lawsuit that
25 included claims of fraud and misrepresentation, the district
   court correctly found that "[n]o reasonable person could question
26 [the judge's] impartiality in [defendant's] case merely because,
   twenty years earlier, she may have been a victim of an unrelated,
27 factually dissimilar fraud."  Id. at 678-79.  Moreover, the court
   noted that "since then[, the judge] has presided impartially over
28 'dozens' of cases involving allegations of fraud."  Id.

provisions of 28 U.S.C. § 144.  See United States v. Sibla, 624
F.2d 864, 868 (9th Cir. 1980) ("If that affidavit is sufficient
on its face, the motion must be referred to another judge for a
determination of its merits under section 144.").

Even if the assigned judge does not believe the stated
grounds are valid, where the challenge is based on extrajudicial
sources, I believe the more prudent approach is to refer the
motion to another judge for decision.  The "institutional
integrity of the federal courts requires scrupulous protection of
public confidence in the judicial process." United States v.
Bosch, 951 F.2d 1546, 1551 (9th Cir. 1991) (O'Scannlain, J.,
dissenting); see also See First Interstate Bank of Ariz., N.A. v.
Murphy, Weir & Butler, 210 F.3d 983, 985 (9th Cir. 2000)
("[J]udges . . . are required to preserve the court's
impartiality and the appearance of impartiality.").[3]  I will
therefore ask the Chief Judge to refer this motion to another
judge for decision.

### Timeliness

Another issue which may have to be addressed by the
judge who decides this motion is its timeliness.  "A motion under
section 144 must be timely, i.e., the motion should be made at

---

[3]      Perhaps in an effort to avoid even meritless
accusations about the impartiality of rulings on recusal motions,
the Western District of Washington requires automatic referral of
all 28 U.S.C. § 144 recusal motions to a different judge.  See W.
Dist. of Wash. Local R. 8(c) ("Whenever a motion to recuse due to
alleged bias or prejudice directed at a judge of this court is
filed pursuant to 28 U.S.C. § 144, the clerk shall refer it to
the chief judge.  If the motion is directed at the chief judge,
the clerk shall refer it to the next senior active judge.  Before
a ruling is made on a motion to recuse any judge, the challenged
judge will be afforded an opportunity to review the motion papers
and decide whether to recuse voluntarily.").

the earliest possible moment after obtaining facts demonstrating

a basis for recusal." <u>United States v. Bell</u>, 79 F. Supp. 2d

1169, 1172 (E.D. Cal. 1999) (finding that a recusal motion must

be filed as soon as practical because "a prompt application

affords the district judge an opportunity to assess the merits of

the application before taking any further steps that may be

inappropriate for the judge to take" and "avoids the risk that a

party is holding back a recusal application as a fall-back

position in the event of adverse rulings on pending matters")

(internal citations and quotations omitted).

          As shown by the attached news clipping, the incident at

my home occurred in December of 1997.  As such, it was public

knowledge before the indictment in this case was filed and the

case assigned to me.  It appeared prominently on Page One of the

Metro Section, with a photograph of me.  While I cannot say with

certainty that all defense counsel knew of it at the time, I know

for certain that at least three of them did.  Thongsouk Theng

Lattanaphom's attorney, Jeffrey Staniels, acknowledged in court

at the last hearing that he saw the article, and two of the

attorneys for the defendants in this case actually represented

the young men who burglarized me in the state court proceeding.

Son Van Nguyen's first attorney, James Greiner, represented one

of the young men, and Bao Lu's first attorney, Robert Peters,

represented the other.  Mr. Greiner and Mr. Peters would not only

have been privy to the information in the news article, but had

to be intimately familiar with all of the details of the crime of

which I was the victim.

          Although I recognize that none of those respected

13

attorneys are the moving force behind the instant motion, if they
thought there was any merit to it, they could have brought the
motion nine years ago.  Instead, none of the defendants or their
attorneys raised it for the first time until now.

        Further, Minh Huynh, who <u>is</u> the moving force behind the
motion, has acknowledged in his affidavit that he personally knew
about the incident at my home before his trial began.  He states
specifically:

> Special Agent Dupre (FBI), the leading agent in this case
> had warned me, during a deal negotiation session <u>before
> trial</u>, that Judge Shubb was a victim of a home-invasion
> robbery, and that if I don't take the deal, Judge Shubb will
> whack me.

(Minh Huynh Aff., Mar. 24, 2008, ¶ 11 (emphasis added)).  Minh
Huynh, it must be remembered, was representing himself pro se
when the trial began.  He can hardly suggest that anything his
attorney said or did precluded him from making the motion.  Yet
he failed to raise this ground, or any other ground,[4] to
disqualify me as the trial judge at that time.

        "It is enough to say that § 144 makes timely filing of
affidavits of bias and prejudice of the essence for the obvious
purpose of preventing their use as a device to obtain last minute
postponements of trial and to prevent a litigant from sampling
the temper of the court before deciding whether or not to file an
affidavit of prejudice."  <u>Peckham v. Ronrico Corp.</u>, 288 F.2d 841,

---

[4]     It is also clear that Minh Huynh knew about the
firebomb case before the trial began, because he states in his
Reply brief that at the time of his meeting with Agent Dupre
before trial he was afraid I would not accept the government's
recommendation based upon what he knew about the sentence in the
firebomb case.  Yet he also failed to raise that ground until
now.

1   843 (1st Cir. 1961); see also First Nat'l Bank of Peoria v.

2   Muller, 851 F.2d 916, 919 (7th Cir. 1988) (movant waived any

3   grounds for making a recusal motion where movant knew the facts

4   at a preliminary hearing and proceeded to trial without objection

5   and raised the bias issue only after the judge's unfavorable

6   ruling).

7          At the time this case was first assigned to me, I was

8   an active judge of this court.  Under Canon 3 of the Code of

9   Conduct for United States Judges, a judge must hear and decide

10  all matters assigned to him, unless disqualified.  Thus, as much

11  of a burden as it was upon me,[5] I have conducted countless court

12  appearances, heard and decided hundreds of motions, and presided

13  over months of trial testimony with contentious objections in

14  this case.  I must admit that during all that time it never

15  crossed my mind that having been the victim of a crime in 1997

16  could have relieved me altogether of the responsibility for this

17  case.

18         Defendants seem to think I enjoy sitting in judgment on

19  them.  Nothing could be further from the truth.  This case has

20  taken up more of my time and worked more havoc with my calendar

21  than any other case I have had in the seventeen years I have been

22  on the bench.  I get no more credit for handling this case than I

23  would for any other case in which the defendants just walk into

24  court, plead guilty, and are sentenced.  Yet I have had to spend

25  hundreds of hours on it.  Hardly a day has gone by when I do not

26  worry about what motions or other procedural maneuvers the

27  _____

28         [5]   This court has the second highest weighted caseload per
    judge of any district in the United States.

1  defendants will come up with next.  If the defendants had raised
2  my prior experience as a ground for recusal when they first could
3  have, and if it had any merit, I would have welcomed the
4  opportunity to withdraw from this case.  But they never gave me
5  that chance until now.

6                              Conclusion

7          All federal judges take an oath to "administer justice
8  without respect to persons, and do equal right to the poor and to
9  the rich. . ."  28 U.S.C § 453.  We take that oath seriously.  No
10 judge I know appreciates being charged with bias or unfairness.
11 Anyone who would seriously think that I could let this kind of
12 unrelated personal experience affect my impartiality as a judge
13 in this case doesn't understand the first thing about me or what
14 it means to be a judge.  Nevertheless, for the reasons discussed
15 above, I will defer the question of whether I am qualified to sit
16 on this case to the sound judgment of another judicial officer.

17         IT IS THEREFORE ORDERED that defendants' motion to
18 disqualify me as the trial judge in this matter is referred to
19 the Chief Judge for assignment to another judge for decision.  I
20 will not consider any of the pending motions; hear any other
21 motions, applications, or requests; sentence any of the
22 defendants; or perform any other judicial duties in this case or
23 ///
24 ///
25 ///
26 ///
27 ///
28 the related cases in Cr. No. S-96-350, Cr. No. S-99-74, Cr. No.

1  S-98-233, Cr. No. S-99-148, Cr. No. S-99-149, Civ. No. S-07-1162,

2  and Civ. No. S-07-2063 until this motion has been finally

3  resolved.  A copy of this order shall be filed in each of those

4  cases.

5  DATED:  May 2, 2008

6

7  _____

8  WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

EXHIBIT A

**JUDGE CONFRONTS BURGLARS IN SOUTH LAND PARK HOME Origin** _Cynthia Hubert Bee Staff Writer_ Publication Date 12/13/1997 Page B1 Section METRO Edition METRO FINAL Dateline Corrections Memo Body Text William B. Shubb, chief judge of the U.S. District Court in Sacramento, surprised two young burglars when he went to his South Land Park home Friday for an early lunch.

Shubb, 59, confronted and conversed with the men before they tackled him and escaped with some of his belongings, police said.

"The judge is not injured, except perhaps his pride a little bit," said Mike Nelson, chief deputy U.S. marshal for the Eastern District of California.

Audrey Lee, a Sacramento police spokeswoman, said Shubb encountered the unarmed intruders in a room off of his garage. The judge's wife was not home at the time, Nelson said.

"They sat him down, and I guess he made conversation. He said, "Don't take that; it's just a keepsake,' " said Lee.

"I guess they took what they needed and left."

Before doing so, said Nelson, the burglars tackled Shubb and ran off. He then dialed 911.

"He may be pretty short and small, but he's tough," Nelson said of the judge. Graphic Text William B. Shubb

Burglars tackled the federal judge and escaped with some of his belongings. Keywords

18